511 A.2d 263

Rockwood Area School District and Pennsylvania National Mutual Casualty Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Tipton), Respondents.

Argued March 11, 1986, before Judges MACPHAIL, DOYLE and BARRY, sitting as a panel of three.

*John J. Bagnato,* with him, *Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose,* for petitioners.

*Samuel D. Clapper,* with him, *Nathaniel A. Barbera, Barbera and Barbera,* for respondent, Alice H. Tipton, Widow of Jack E. Tipton, deceased.

OPINION BY JUDGE BARRY, June 23, 1986:

This appeal results from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision awarding benefits to the claimant, Alice H. Tipton, on her fatal claim petition. The respondent, Rockwood Area School District (Employer), has pursued this petition for review.

The claimant's petition had previously been denied on three occasions, and this case possesses a coextensively lengthy procedural history. The claimant's deceased, Jack E. Tipton, died on May 31, 1973 after suffering a fatal heart attack while at work. The deceased was employed as Superintendent of Schools of the school district, and on the day of his death was directly responsible for the dismissal of classes at the district high school, the principal of the school being absent on that date. Following the dismissal and his lunch period, the decedent collapsed over his desk and died later the same day. A fatal claim petition filed thereafter was contested by the employer.

Testimony adduced in the course of ensuing hearings revealed that the deceased had on three occasions within the prior year been hospitalized for his heart condition; that conflicts with a certain member of the school board caused the deceased emotional stress; and that, according to his secretary, on the day of his fatal heart attack the decedent "was very concerned about [the high school] students" driving their cars home. Based upon a hypothetical question embracing the foregoing scenario, the claimant's expert testified that "with reasonable certainty, [one] could say that the stress of [the deceased's] work was a precipitating factor in triggering his fatal heart attack. *Jacobs Deposition* at 97. Conflicting testimony, however, was submitted to the effect that on the day of his death the deceased "appeared to be in good health and gave no indication

that he was not feeling well." In addition, the employer's medical expert, faced with precisely the same hypothetical, and recognizing that due to other numerous ailments the deceased was at high risk of coronary death, denied that it was "professionally possible . . . to give an opinion as to the role played by employment" in the deceased's death. *See Lantos Deposition* at 22-23.

The latter testimony was believed by the referee, who denied the petition and made the following pivotal findings of fact:

25. At the time of his death, the decedent was not suffering from emotional distress.

26. The decedent's death was not the direct result of his employment and was not related thereto by reason of any emotional distress connected with said employment but was in fact the result of the natural progression of the decedent's pre-existing cardiac condition.

*Referee's Findings of Fact,* Decision of 3/2/76.

The denial was appealed, and the Board reversed, stating that "[w]e hold that the Referee's crucial findings of fact are not supported by competent evidence. This case must be remanded to him for clarification of the issues of stress and of medical evidence as to the cause of death." *Board Decision* of 9/16/76.[1] On remand the referee reached the same result based upon the same reasoning, denying the claimant's request that the record be re-opened for further testimony that the de-

---

[1] The employer immediately appealed to this Court from the Board's remand order, "alleging that there was competent evidence to support the referee's findings and that the Board, without taking further evidence, erred by substituting its finding of fact for those of the referee." *Rockwood Area School District v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 250, 251, 381 A.2d 230, 231 (1978). That appeal, however, was quashed as interlocutory. *Id.* at 254, 381 A.2d at 232.

ceased was under stress on the day of his fatal infarction. *Referee's Decision* of 6/23/78. The Board subsequently reversed the latter portion of the decision, remanding and ordering that "the parties shall be permitted to present evidence concerning whether . . . decedent on the day of his death was under stress." *Board Decision* of 11/20/80.

After further testimony the referee again denied the petition based upon his prior finding that the deceased's death was unrelated to any work-related emotional stress. *Referee's Decision* of 9/16/81. Claimant appealed, and the Board again reversed and remanded, this time concluding that the referee erred as a matter of law and concluding that "a specific incident [need have] caused the fatal heart attack." *Board Decision* of 11/4/82. The Board's remand order included direction that a new decision be issued based upon "application of the correct legal princip[le]s concerning heart attack cases." *Id.* Before the commencement of remand proceedings, however, the formerly presiding referee died, and a new referee was assigned to the case. After a brief hearing, the new referee granted the petition, finding as a fact that, based upon the testimony of claimant's physician, "the Decedent's death was the direct result of his employment." *Referee's Finding of Fact* No. 15, *Decision of* 2/4/83. The Board affirmed, holding that the referee's findings were based upon substantial evidence. *Board Decision* of 12/27/84. From that affirmance the employer has appealed.

Our initial scope of review embraces a determination of whether constitutional rights have been violated, whether the referee's findings of fact are supported by substantial evidence, or whether an error of law has been committed. *Barna v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 88 Pa.

Commonwealth Ct. 83, 86, 488 A.2d 651, 653 (1985) (allocatur granted). The employer sets forth two principal arguments in its appeal, first asserting that the Board erred as a matter of law in its *initial* remand, because it was based upon an improper re-evaluation of the referee's credibility determinations. Second, and in conjunction with the foregoing argument, the employer asserts that the referee's original findings and conclusions were in fact correct and show no capricious disregard of competent evidence. We agree and thus reverse the Board.

We note at the outset that claimant asserts that the entire issue of the Board's first remand is *moot,* arguing that "[a]ny error in the initial remand is harmless . . . because the Referee again found for the Employer and the Employer suffered no harm or prejudice, even if the Board's remand was improper." *Brief for Respondent* at 18. Claimant insists, in turn, that the only order employer can possibly challenge is the most recent order of the board *affirming* the grant of benefits. Only at this point, claimant argues, has the employer been prejudiced by any action of the Board. We decline, however, to follow that reasoning. The pending controversy embraces the legal propriety of the whole of the proceedings. We cannot close our eyes to earlier error, especially that which ultimately, by the very force of time, led to a later decision adverse to the originally prevailing party. The issue regarding the first remand is thus still cognizable and necessary to the disposition of this case.[2]

---

[2] Additionally, because the second and third remands were, like the first, interlocutory, *see, e.g., Hartman v. Workmen's Compensation Appeal Board,* 67 Pa. Commonwealth Ct. 65, 445 A.2d 1364 (1982), the present appeal constitutes the first time that this Court has the opportunity to determine whether the Board erred in its initial remand.

We turn, then, to the employer's assertion that the Board exceeded its scope of review in vacating and remanding the original decision of the referee. As we have recited, the referee found specifically that the deceased was not suffering from emotional distress at the time of his death, and that he died instead due to the "natural progression" of a pre-existing cardiac condition. The Board, in vacating and remanding, acknowledged that the referee was the fact-finder and that its own scope of review was limited to a determination of whether a capricious disregard of competent evidence had been committed. *Board Decision* of 9/16/76, at 4. (Citing *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).) *See also American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977). Presumably consistent with those precepts, the Board reviewed the evidence and concluded that the referee's "crucial findings of fact are not supported by competent evidence."

Our careful review of the record, however, convinces us that the Board in fact reassessed the referee's determinations concerning credibility, notwithstanding its own comments to the contrary. With respect to whether the claimant was under stress on the day of his death, the referee chose to believe the evidence from a work-colleague of the deceased that, during lunch prior to the death, the deceased "appeared to be in good health and gave no indication that he was not feeling well." *Referee's Finding of Fact* No. 21, *Decision* of 2/11/76. The Board declared this finding "not to be supported by competent evidence," apparently finding more persuasive the contrary testimony of the deceased's secretary and that of other lay witnesses. That the Board may have found such testimony more persuasive, how-

ever, was not a perception relevant to its review of the case. *Universal Cyclops*. The testimony relied upon by the referee was competent and within his province to accept.

With respect to the referee's acceptance of the employer's expert's testimony, the Board's improper reassessment is even more apparent:

> One can infer by indirection that [the referee] has rejected entirely the unequivocal testimony of the treating physician, and that he has concluded on the basis of the testimony of [employer's expert] that death resulted from a natural progression of heart disease. [A] careful review of the latter testimony reveals that he felt unable to express any opinion as to the cause of death. . . . Incidentally, he had never examined the Decedent, and was relying exclusively on records and his admitted expertise in the field of cardiology.
>
> We hold that the Referee's crucial findings of fact are not supported by competent evidence.

*Board Decision* of 9/16/76, at 5. Quite to the contrary, however, the employer's expert had testified that, based upon the hypothetical question originally offered by the claimant,[3] it was professionally impossible to give an opinion with respect to the role played by employment in the decedent's death. That opinion was prefaced by a recounting of the deceased's other documented ailments and consequent pre-disposition to cardiac death, testimony which was also believed and accepted by the referee:

---

[3] That hypothetical, as we have stated, included an account not only of the alleged stress to which the deceased was subjected on the day of his death, but of the prior episodes testified to in order to support the proposition that the deceased's job put him under stress in general.

[T]he decedent . . . had for a considerable period of time suffered from the following diseases prior to his death and was taking medication and treatment for the same: Diabetes Mellitus, Hypercholesteremia, elevated serum uric acid, Atherosclerotic Coronary Artery Disease, all of which greatly increased the risk of heart collapse and death even in the absence of stress.

*Referee's Finding of Fact* No. 18, *Decision* of 2/11/76.

Contrary to the Board's conclusion, the foregoing testimony constituted competent evidence to support the referee's finding that the death was not work-related but was instead the result of a non-work related progression of the deceased's heart disease.[4] That the Board found the claimant's expert more persuasive was,

---

[4] Also contrary to the Board's statement, the doctor's opinion was not rendered incompetent because he did not give an unequivocal opinion that the heart attack was not work related. Employer's expert was board-certified in internal medicine, and he based his opinion that it was professionally impossible to draw a relationship between the deceased's work conditions and the heart attack in recognition of the claimant's physical condition and the environmental circumstances surrounding his death. His opinion was thus clearly competent. *Cf. Workmen's Compensation Appeal Board v. Mifflin-Juniata State Health Foundation,* 19 Pa. Commonwealth Ct. 133, 338 A.2d 691 (1975). In any case, where, as here, there is no obvious causal relationship between work and the injury or death, the burden is on the *claimant* to demonstrate the nexus with unequivocal medical evidence. *Zoltak v. Keystone-Harmony Dairy,* 47 Pa. Commonwealth Ct. 378, 379, 408 A.2d 198, 199 (1979). *Cf. McPhillips v. School District of Philadelphia,* 40 Pa. Commonwealth Ct. 204, 208, 396 A.2d 922, 924 (1979) (where expert of party *with* burden of proof in fatal claim petition premised unequivocal testimony with respect to causation on hypothetical including pivotal, non-existing fact, the Board was held not to have capriciously disregarded competent evidence). As suggested in the accompanying text, however, we believe the Board's conclusion that the evidence was incompetent actually was based upon an improper reassessment of credibility.

again, a factor irrelevant to its review. We thus conclude that the Board exceeded its scope of review in its initial remand.[5]

At this juncture, then, our own scope of review encompasses a determination of whether the referee's findings of fact are consistent with each other and with the conclusions of law, and can be sustained without a capricious disregard of competent evidence. *American Refrigerator* at 592, 377 A.2d at 1009. As we cannot say that there has been a "willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided,"[6] we re-instate the original findings and conclusions of the referee.

Reversed.

---

[5] The claimant argues that the Board was not reassessing credibility, but was, rather, remanding for crucial findings on causation "and of how [the referee] evaluated the testimony to reach his conclusion in light of the correct legal standard. . . ." *Brief for Respondent* at 24. We reject this argument. There is every indication that the Board perceived precisely the basis upon which the referee denied the claim, but was simply of the view that claimant's lay witnesses and medical expert were more persuasive than those of the employer. In addition, there is no indication that the Board considered the referee as having committed an error of law which would have justified reversal and/or remand. Such a conclusion was only articulated by the Board in the course of the *third* remand, in which the Board for the first time perceived the referee as not applying the appropriate heart attack causation standard.

[6] *Wilkes-Barre Iron & Wire Works v. Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 612, 615, 309 A.2d 172, 173 (1973). Because we find the Board erred in its initial remand, we need not reach the issue of whether the substitute referee could, without a denial of due process to the employer, reassess the credibility of testimony without new hearings having been held. *Cf. King Kup-Schoener Candies, Inc. v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 351, 310 A.2d 717 (1973) (issue raised in Court but held waived because objection not timely entered).

## Order

Now, June 23, 1986, the order of the Workmen's Compensation Appeal Board at A-85544, dated December 27, 1984, is hereby reversed.